# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SAMUEL C. STEIN,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:14-cv-274 |
| - vs - | | | District Judge Thomas M. Rose |
| | | | Magistrate Judge Michael R. Merz |
| MARK HOOKS, Warden, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Samuel Stein under 28 U.S.C. §

2254.  On Stein's Petition (Doc. No. 1-2), the Court ordered Respondent to answer (Doc. No. 2).

Respondent has filed the state court record (Notice, Doc. No. 6) and a Return of Writ (Doc. No.

7) and Petitioner has filed a timely Reply (Doc. No. 9).  The case is therefore ripe for decision.

Petitioner pleads the following Grounds for Relief:

> **Ground One:** Mr. Stein's conviction is against the manifest weight of the evidence.
>
> **Supporting Facts:** The jury lost its way when it convicted Mr. Stein. The sole witness to their being a "murder plot" was by Ms. Ramga, an individual with known psychiatric disorders and an admitted interest in fabricating a case against Mr. Stein. His conviction is a violation of his 5th , 6th  and 14th Amendment rights under the U.S. Constitution.
>
> **Ground Two:** The evidence presented by the State was insufficient to convict Mr. Stein.
>
> **Supporting Facts:** By the State's own witnesses, the overt act of making the phone call was suggested by and carried out by Ms. Ramga, and the Appellant never touched or spoke into the phone,

1

or told her to make a call in the first place. The State failed to meet its burden to produce evidence that would convince the average mind of Mr. Stein's guilt beyond a reasonable doubt, and as such his conviction is a violation of his 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Three:** The trial court erred by sentencing Mr. Stein to a sentence greater than the minimum.

**Supporting Facts:** The State offered a plea agreement of 3 years in prison if Mr. Stein would plead guilty to 1 of the counts in the indictment, which the Trial Court stated that it would accept. After exercising his Constitutional right to a trial, the Court sentenced Mr. Stein, who was a first time offender, to 9 years in prison, instead of to community control or the minimum. This arbitrary abuse by the court violated the Appellant's 5th, 6th, and 14th Amendment rights under the U.S. Constitution.

**Ground Four:** The trial court erred by granting and expanding the scope of the State's motion in limine, which violated the appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Supporting Facts:** The trial court stated that "psychiatric history is not relevant" and that any questions into the witnesses psychiatric history would be a violation of the court's ruling on the motion in limine. State witnesses Mausolf and Ramga, both of who were estranged former girlfriends, and had extensive histories of psychiatric disorders that made questions into their history of mental health disorders, use and abuse of psychotropic medication critical to their credibility and the establishment of motive for their testimony. The Court's denial of the defendant's right to confront his accusers was a violation of his 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Five:** The state witnesses committed perjury regarding the recordings and transcripts presented at trial.

**Supporting Facts:** State witnesses Ms. Ramga and Sgt. Thompson committed perjury when they claimed that the recordings and transcripts presented to the jury were complete and accurate copies of the originals. The original copy of the recording of March 6, 2012 included a conversation between Det. Ring and Ms. Ramga which was excluded from the recording played for the jury at trial and transcripts presented by the State. The State admitted to having tampered with and altering the transcripts prior to giving them to the jury. The Trial Court permitting the jury to hear perjured

2

testimony that the State and Court knew to be perjured, as well as Appellate counsel's failure to raise the issue on appeal violated the appellant's 5th , 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Six:** The prosecution made highly prejudicial and improper remarks that violated the appellant's 5th , 6th and 14th Amendment[sic] rights under the U.S. Constitution.

**Supporting Facts:** The State made improper and inflammatory remarks during closing arguments that were meant to mislead the jury, lend the credibility of the State to witness testimony, as well as to denigrate the defendant and defense counsel.

**Ground Seven:** A substantial overt act in furtherance of the conspiracy was not performed by the appellant or a co-conspirator. 4th, 5th, 6th and 14th Amendment, U.S. Constitution.

**Supporting Facts:** The State alleged that the conversation between Ms. Ramga and the Appellant, which constituted planning and agreeing, were overt acts in and of themselves, when they clearly were not. The police stated that they did not arrest the appellant until after Ms. Ramga placed the phone call that they had previously arranged for her to make. Also, Ms. Ramga testified that at no point had she ever been a participant to the alleged offense. The Appellant was not only convicted for a crime he did not commit, because in fact no crime had actually occurred, which violated his rights under the 4th , 5th, 6th, and 14th Amendments of the U.S. Constitution.

**Ground Eight:** The trial court erred when it allowed testimony by the state's witnesses regarding allegedly criminal acts by the appellant that were not ever charged in the indictment, namely that he had filed false reports with law enforcement regarding being harassed by Ms. Mausolf. 5th, 6th, 14th Amendments, U.S. Constitution.

**Ground Nine:** The trial court abused its discretion by prohibiting members of the jury from taking notes over the course of a 3 day trial that involved multiple witnesses, exhibits and recordings, and violated the appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Ten:** Trial counsel failed to investigate and utilize exculpatory evidence. 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** Defense counsel never subpoenaed Mr. Stein's medical records showing his history of blackouts and incoherence, Ms. Ramga and Ms. Mausolf's cellular phone text message history or their psychiatric records, which would have shown that the defendant was telling the truth from the beginning. This omission prejudiced the defendant and violated his 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Eleven:** The indictment was defective.

**Supporting Facts:** The indictment alleged that all of the 11 acts were performed with a coconspirator, Ms. Ramga. Since Ms. Ramga was acting as a police agent at the time, she cannot be a co-conspirator. Also the indictment was not signed by the foreman of the grand jury, making it defective, and violating the Appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Twelve:** The admission of evidence seized from the appellant's residence, vehicle, workplace and storage unit violated the appellant's 4th, 5th 6th and 14th Amendment rights under the U.S. Constitution.

**Supporting Facts:** The Miamisburg Police Department did not obtain a search warrant for the Appellant's vehicle or workplace, and the warrants for his apartment, storage unit and phone did not authorize the seizure of items that were confiscated and included as evidence at trial. The inventory and report described "controversial propaganda," "flags, armbands and clothes," an autobiography "Making a Killing," and a drawing pad. This search, and the use of the evidence seized, constituted a violation of the Appellant's 4th, 5th, 6th and 14th Amendment Rights under the U.S. Constitution.

**Ground Thirteen:** Law enforcement never obtained a warrant for the recording of phone conversations, the body wire and surveillance conducted during the course of their investigation. 4th, 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The Miamisburg Police Department never obtained a warrant authorizing their surveillance, phone and body wire recordings while they were investigating the Appellant, even though they had ample opportunity to do so over the course of their 3 day investigation. This violated the Appellant's 4th and 14th Amendment rights under the U.S. Constitution.

**Ground Fourteen:** The complaint by the police was improperly processed. 4th, 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The complaint affidavit by Det. Ring was signed by the detective but never notarized. This violated the Appellant's 4th, 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Fifteen:** Defense counsel never requested a suppression hearing on witness statements and witnesses Ramga and Mausolf even though there was a reasonable basis to do so. Ms. Ramga, who initiated the investigation against Mr. Stein, had a well-known and well-established history of psychiatric disorders, including hallucinations and psychotropic drug use and abuse, and Ms. Mausolf had a history of filing false allegations against Mr. Stein. Trial counsel's failure to request a suppression hearing on evidence presented by these two witnesses is a denial of effective assistance of counsel, and a violation of the Appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Sixteen:** The trial court erred by permitting Ms. Ramga to make a victim impact statement at sentencing even though she was not a victim.

**Supporting Facts:** The Trial Court committed an abuse of discretion and harmful error by allowing Ms. Ramga to make a victim impact statement at sentencing even though she was never a victim of the alleged crime and was working as a police agent during the entirety of the investigation. The court committed an abuse of discretion that was contrary to law in allowing Ms. Ramga to make a victim impact statement that violated the Appellant's 5th, 6th, and 14th Amendment rights under the U.S. Constitution.

**Ground Seventeen:** The Trial court repeatedly allowed hearsay and speculation testimony. The State also used leading questions to elicit desired answers from witnesses. Trial counsel repeatedly objected to these errors but the court consistently overruled them, which was an abuse of discretion and plain, harmful error that violated the Appellant's 5th, 6th and 14th Amendment rights under the U. S. Constitution.

**Ground Eighteen:** The trial court did not maintain a copy of the jury instructions or the jury verdict forms as required by O.R.C. 2945.10(G). 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The record shows that the trial court never filed or maintained a copy of the written jury instructions that the jury was given to take with them while deliberating, as required by O.R.C. 2945.10(G), and there is not a time stamped copy of the jury verdict form signed by all members of the jury for review by a court of appeals.

**Ground Nineteen:** The trial court erred by allowing the State to use tampered evidence in the form of altered transcripts and recordings at trial. 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The State initially made transcripts available through discovery but changed the contents of the transcripts and did not provide defense counsel with a copy of their new version prior to trial as required by Criminal Rule 16. The State admitted to unilaterally changing the transcripts of the wire recordings which excluded Det. Ring and Ms. Ramga's phone conversations and added non-existent details to the conversation, which prejudiced the Appellant by withholding exculpatory evidence from the Defendant and jury, and violated his 5th, 6th, and 14th Amendment rights under the U.S. Constitution.

**Ground Twenty:** The trial court abused its discretion by refusing to investigate possible juror misconduct. 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The court erred when it refused to investigate possible juror misconduct when it was brought to the attention of the court. Defense counsel requested to poll the jury but the court refused to even question the jurors about their actions. This was an abuse of discretion that violated the Defendant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Twenty-One:** The trial court abused its discretion when it denied the defense Rule 29 motion for acquittal. 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The court abused its discretion when it denied the defense Rule 29 Motion for Acquittal after hearing all of the evidence presented by the State. This violated the Appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Twenty-Two:** The trial court erred when it refused to grant a mistrial after defense counsel brought potential juror misconduct to the court's attention and the court refused to

properly investigate it. This violated the Appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

**Ground Twenty-Three:** The Court of Appeals abused its discretion when it refused to grant a reconsideration of its denial of the appellant's 26(B) motion because of lack of access to courts. 5th, 6th, 14th Amendment, U.S. Constitution.

**Supporting Facts:** The Court of Appeals erred when it refused to grant a reconsideration of its denial of the Appellant's 26(B) Motion because of lack of access to the courts. The Appellant clearly demonstrated information that should have been considered by the court, but the court refused to consider it. The denial of access to the courts is a chronic and ongoing problem experienced by pro se litigants who are incarcerated, and the Court's refusal to grant a reconsideration violated the Appellant's 5th, 6th and 14th Amendment rights under the U.S. Constitution.

(Petition, PageID 11-33.)

## Procedural History

In 2012 the Montgomery County grand jury indicted Stein on two counts of conspiracy to commit aggravated murder and two counts of conspiracy to commit murder.  After denial of Stein's motion to suppress, the case proceeded to trial and the jury found Stein guilty on all four counts.  After merger of all counts under Ohio Revised Code § 2941.25, the court sentenced Stein to nine years imprisonment.

Stein appealed to the Second District Court of Appeals, raising as assignments of error (1) that his conviction was against the manifest weight of the evidence; (2) that his conviction was based on insufficient evidence; and (3) that the trial court erred in sentencing him to more than the minimum sentence prescribed by law.  The Second District affirmed the conviction and

sentence.  *State v. Stein*, 2013-Ohio-3050, 2013 Ohio App. LEXIS 3101 (2nd Dist. July 12, 2013).  Stein did not file a timely appeal to the Supreme Court of Ohio.

On February 5, 2014, Stein filed a delayed application to reopen the appeal pursuant to Ohio R. App. P. 26(B).  The Second District denied the application as untimely.  *State v. Stein,* Case No. 25432 (2nd Dist. Mar. 20, 2014)(unreported, copy at Doc. No. 6-1, PageID 380-82).  Stein's motion for reconsideration was denied and the Ohio Supreme Court declined to exercise jurisdiction over an appeal.  Stein filed the instant case on August 18, 2014 (Doc. No. 1).

# Analysis

## Ground One:  Conviction Against the Manifest Weight of the Evidence

In his First Ground for Relief, Stein asserts his conviction is against the manifest weight of the evidence.  Respondent asserts this claim is not cognizable in federal habeas corpus (Return of Writ, Doc. No. 7, PageID 1112-13).

Stein accepts the proposition that federal habeas corpus extends only to persons in custody in violation of the Constitution, laws, or treaties of the United States (Reply, Doc. No. 9, PageID 1148).  He then argues "[a]ll of the perceived state law and procedure violations have already been presented to all of the state courts as federal constitutional violations, and each rises to a violation of the Petitioner's rights to due process under the Fourteenth Amendment."  *Id.*  at PageID 1149.

However, the fact that a state procedural right has been argued to the state courts as a federal constitutional claim (i.e., that it has been "fairly presented") does not make violation of

that right a federal constitutional violation.  Failure to abide by state law is not itself a constitutional violation.  *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976);  *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Therefore Stein's First Ground for Relief should be dismissed with prejudice for failure to state a claim on which federal habeas corpus relief can be granted.


**Ground Two:  Conviction Based on Insufficient Evidence**


In his Second Ground for Relief, Stein asserts the State presented insufficient evidence to ground his conviction with respect to the overt act of "making the phone call" in that the act was suggested by and carried out by Ms. Ramga, and Appellant never touched or spoke into the phone in the first place." (Petition, Doc. No. 1-2, PageID 12.)

Respondent reads this as being an insufficiency of the evidence claim related only to this one overt act (Return of Writ, Doc. No. 7, PageID 1113).  In his Reply, Stein does not dispute that characterization.[1]

---

[1] Stein's Reply contains no section expressly directed to Ground Two.  Under the heading "Stein's Grounds for Relief," Stein begins with Ground Four (Doc. No. 9, PageID 1159).  In the body of the text at PageID 1164, he

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

mentions Ground Seven.  At PageID 1170 he captions a section as Ground Twelve.  At PageID 1177, he discusses Grounds Five and Nineteen together.

> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

A claim of insufficient evidence was presented to the Second District Court of Appeals on direct appeal and decided by that court on the merits. On direct appeal, Stein did not single out this one overt act as unproved by sufficient evidence. Instead, all of his factual argument

was made under his First Assignment of Error on manifest weight and reads as follows:

> In the case at bar, the evidence presented by the State was not
> believable, and thus the jury lost its way. The sole evidence of the
> "murder plot" was presented through the testimony of Andrea
> Ramga. Ms. Ramga testified she wished to evict Mr. Stein from
> her home. Once the officer explained that process, only then does
> Ms. Ramga mention the "murder plot". (Tr 7). It's Ms. Ramga
> through the aid of the Miamisburg Police Department who then
> goes to Mr. Stein's place of employment, interrupts him while
> working, and then she brings up the concept of the murder plot.
> (Tr. 9-15, 323-331, 357- 361). The notion that Mr. Stein was the
> mastermind behind this "plot" is contradicted by the State's own
> evidence.

(Appellant's Brief, Doc. No. 6-1, PageID 237.)  The only legal argument is made on the Second

Assignment of Error, the claim that the conviction is supported by insufficient evidence.  *Id.*  at

PageID 237-39.

When a state court decides on the merits a federal constitutional claim later presented to a

federal habeas court, the federal court must defer to the state court decision unless that decision

is contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131

S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685,

693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

In addition to AEDPA deference on questions of law, a federal habeas court must give

deference to state court findings of fact; such findings are presumed to be correct and can be

overcome only by clear and convincing evidence in the state court record.  28 U.S.C. §

2254(e)(1); *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388 (2011).  Stein recognizes the

presumption and undertakes to overcome it (Reply, Doc. No. 9, PageID 1145-48).

In deciding this claim, the Second District wrote as follows:

**I. Stein Conspires with his Apartment Mate and Ex-Girlfriend to Murder a Previous Ex-Girlfriend and the Mother of his Child**

 [*P3]  Stein had a romantic relationship  with Nicole Mausolf that lasted from late 2004 to late 2007. They had a son together.

 [*P4]  Stein later became romantically involved with Andrea Ramga, and moved into Ramga's apartment in April 2011. Although their romantic involvement ended after three to four months, Stein continued to live in Ramga's apartment, paying her rent.

 [*P5]  Ramga became aware that Stein "hated" Mausolf, who had taken him to court over child support issues more than once, with the result that Stein was jailed for contempt and lost one of his two jobs. Stein continued to work at a McDonald's restaurant.

 [*P6]  "A couple of months" after Stein moved in with Ramga, he began discussing a plan to kill Mausolf. For a while, Ramga did not take Stein seriously, believing that this was just Stein's way of expressing his hatred for Mausolf, and what Mausolf had done to him.

 [*P7]  One Thursday, Stein told Ramga, "if we do this on Friday, I have the weekend off so I can clean up." According to Ramga, "that's when I knew that he was serious. He wanted to do it and he wanted to do it now." Ramga testified that she was afraid for her life for two reasons: first, Stein was exhibiting a propensity to kill his ex-girlfriends, a group to which she belonged; and second, the plan would result in Ramga and Stein being the only surviving witnesses to Mausolf's murder, which could motivate Stein to eliminate Ramda [sic] as a witness.

 [*P8]  Ramga called the Miamisburg Police Department the following Monday, March 5, 2012, told them that she was afraid of her roommate, and asked what her options were to get him out of her apartment. Miamisburg Police Officer Justin Small called her back and an appointment was made for her to meet with him later that evening.

 [*P9]  During her meeting with Officer Small, Ramga reported that her roommate, Stein, was asking her to assist him in killing his ex-girlfriend, Mausolf. Small then recalled that Stein had come to the police station to complain about Mausolf's having sent harassing text messages to Ramga, and Small had been the police

13

officer who had met with Stein. Small had explained to Stein at that time that Ramga would need to make a complaint in order to initiate any action.

[*P10]  In fact, after Stein had met with Small, he had prevailed upon Ramga to come to the police station with him to complain about Mausolf. Although Ramga had found Mausolf's text messages annoying, she enjoyed a good relationship with Mausolf,  and did not consider any of the messages to be harassing. She agreed to go with Stein to the police station because she was afraid of him. The police officer who met with Stein and Ramga (not Officer Small) said that she would call Mausolf to get her to "back off."

[*P11]  The police officer's plan to call Mausolf was not acceptable to Stein, so no complaint against Mausolf was filed. It was not acceptable to Stein because it was inconsistent with his plan to kill Mausolf. That plan required Ramga to befriend Mausolf, while simultaneously complaining that Mausolf was harassing her. Ramga would then ask Mausolf to come to the apartment some evening after work, where Stein would shoot Mausolf in the face with a shotgun. Stein would then claim that Mausolf had come into the apartment uninvited, and then advanced upon him menacingly, as a result of which Stein had shot her. Stein discussed the fact that he would have to be sure he could kill Mausolf with one shot, since multiple shots would militate against his defense of self-defense. To be sure of killing Mausolf with one shot, Stein would shoot her in the face with a shotgun, at close range.

[*P12]  Officer Small had Ramga call Stein to discuss the  plan to kill Mausolf. Stein said nothing in response, and eventually hung up. A recording of this phone call was played for the jury and admitted in evidence. Officer Small then passed Ramga on to Police Detective Ring. Small had no further contact with Ramga.

[*P13]  The next day, Tuesday, March 6, 2012, Ramga went to the McDonald's where Stein worked, wearing a body wire, and asked to speak with him. A recording of this two-part conversation was played for the jury and admitted in evidence. In the first part, Ramga told Stein that she had decided that: "I think I'm in. I think she's gotta go." Ramga then asked Stein when he wanted to do it, to which Stein responded: "As soon as possible."

[*P14]  Ramga asked Stein if he wanted to do it the next night, adding that she could call Mausolf and ask her to meet Ramga at

14

the apartment about 8:00. Stein replied: "Yeah." Ramga then asked Stein if she should be in the back room or in the bathroom. Stein responded: "You want, just, just let her in and then go in the bathroom." Stein then added: "And then, and then, you know, you were in the bathroom, I heard the door open, I came out, and whoa ..."

[*P15]  Ramga then told Stein that she could call Mausolf from her mother's house and block the number, but Stein said: "I wouldn't do that." Later in this conversation, Stein explained why he did not want to interfere with the ability to trace the call back to Ramga — he could incorporate the phone call from Ramga to Mausolf into his plan: "But anyway, so, I mean, so basically, you know, we, you called her, told, you know, told her to quit callin' and textin' or you were gonna call the police, and you know, that was it, you didn't think anything else was gonna happen, you know, you know, you felt better about it. The next thing we know she shows up."

[*P16]  After Ramga then said: "She shows up and walks in the house," Stein continued: "She shows up and walks in the house while you're in the bathroom. I came out and saw her, told her to get the f*ck out, she wouldn't leave, she came at me, I let her have it, and you heard the scuffle and came out, freaked out, and you know, I said, I'm callin' the police."

[*P17]  After Ramga then said: "Okay," Stein said: "I mean, that's, the simpler, the better." This part of the conversation continued, but nothing of further consequence was said.

[*P18]  Stein went back into the McDonald's after this part of the conversation. Detective Ring, who, with another officer, was parked elsewhere in the McDonald's lot, then called Ramga and asked her to see if she could get Stein to discuss the role of the shotgun in the plan to kill Mausolf. Ramga had asked Stein: "You still have your shotgun, right," to which Stein responded affirmatively, but there had been no other mention of the shotgun.

[*P19]  Ramga then succeeded in getting Stein back out of the McDonald's where he worked. She asked him: "Um, how am I, I'm not going to get hit with the shotgun bullet?" Stein replied: "You're gonna be in the bathroom."

[*P20]  After a couple more exchanges, Stein referred to the fact that he would "get my shotgun," and "get in the kitchen, behind the stove."                                                    [FN1

15

Besides the actual audio-recording of the two-part conversation between Ramga and Stein on March 6, 2012, the State prepared a written transcript of this conversation, which was given to the jury as an aid to their listening to the recording, but which they were not allowed to keep as evidence. Stein's comments quoted here were interlineated in the typed transcript. We have listened to the entire recording, and what we have quoted here, which differs slightly from the interlineation, is what we heard Stein say.]

[**P21**]  At the end of this, the second part of the two-part conversation, Stein told Ramga to keep her part "really simple." After reviewing her part with Ramga one more time, Stein concluded with: "And I'll take care of the rest."

[**P22**]  During this entire conversation, Stein expressed no reticence whatsoever about the plan to kill Mausolf. As the State argues, the conversation is at least consistent with, if it does not suggest, that the plan they were discussing had been formulated by Stein, as Ramga testified. But even if it weren't, Stein evidenced complete willingness to participate in the conspiracy.

[**P23**]  The next day, March 7, 2012, a little after 1:00 p.m., Ramga met Stein again at the McDonald's where he worked. Again, she was wearing a body wire, and her conversation was recorded. During this conversation Ramga told Stein that Mausolf had called her and left a message, which would give Ramga "one more reason to call" Mausolf. Ramga told Stein she figured he would want to be there when she called Mausolf, to which Stein responded: "Oh yeah, definitely."

[**P24**]  Ramga asked Stein what she should say to Mausolf. Stein told Ramga: "Okay, yeah, you, you kicked me out, uh, you got together all my stuff and you're, you know, I left some books behind, you can say that a friend came and got me or something like that, you know, but uh, you kicked me out, you had the locks changed, and uh, if you want, you know, tell her that you're not going to get home until after ..."

[**P25**]  After some brief discussion, Ramga asked Stein if 8:00 that evening would be O.K. as the time that Mausolf should be told to come to the apartment, and Stein agreed, saying: "That would give us time to go home and set the house up, and tell her trash comes tomorrow so if she wants it ... ."

**[\*P26]**  Ramga then purported to make the call to Mausolf. In reality, in a prior arrangement with the police, she was speaking to a secretary in the Miamisburg police department, who was told to respond naturally. It appears that Stein could not overhear the other end of the conversation; Ramga had begun by asking to speak with Nicole [Mausolf], before addressing the party on the other end of the line as Nicole, and Stein asked Ramga, after the brief phone call: "Who answered the phone?" Ramga told him that Nicole had answered the phone.

**[\*P27]**  Ramga then appeared to be asking Stein to go over the plan one more time, and Stein did so.  He told Ramga that he would be in the kitchen, behind the stove, that Ramga should let Mausolf in, then excuse herself and go in the bathroom and shut the door. Stein continued: "And, I'll take it from there, and uh, what happened is, you were in the bathroom, I was in the kitchen gettin' ready to do some laundry, she barged in, told her to get the f\*ck out, she wouldn't, I went and got my shotgun and told her to get out, by that time she was closing in on me, I let her have it."

**[\*P28]**  Stein then explained to Ramga that by having been in the bathroom while Stein was shooting Mausolf with the shotgun, she would not have to relate a story about what Stein said and did, and what Mausolf said and did.

**[\*P29]**  Stein then told Ramga that he would be home before eight; Ramga responded: "Okay. See you then"; and Stein said: "All right. Have fun." The conversation then ended.

**[\*P30]**  The police went into the McDonald's where Stein had returned to work, and arrested him.

## II. The Course of Proceedings

**[\*P31]**  Stein was charged by indictment with two counts of Conspiracy to Commit Aggravated Murder, and two counts of Conspiracy to Commit Murder. Mausolf was the intended victim in all four counts. All four counts are felonies of the first degree. R.C. 2923.01(J)(1). With respect to the counts involving Aggravated Murder, Stein was charged both with Conspiracy in violation of R.C. 2923.01(A)(1), and with Conspiracy in violation of R.C. 2923.01(A)(2). Similarly, with respect to the counts involving Murder, Stein was charged both under R.C. 2923.01(A)(1) and R.C. 2923.01(A)(2).

[*P32]  R.C. 2923.01(A)(1) provides that no person shall: "With another person or persons, plan or aid in planning the commission of [the specified offense]." R.C. 2923.01(A)(2) provides that no person shall: "Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of [the specified offense]."

[*P33]  R.C. 2923.01(B) provides as follows:

> No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.

[*P34]  At trial, each of the four verdict forms corresponding to the four counts of the indictment was accompanied by eleven interrogatories asking the jurors to determine if Stein had committed certain specified overt acts. These sets of interrogatories were identical with respect to each of the four counts. With respect to each count, the jury returned nine of the interrogatories (numbers two through ten) with a unanimous finding that Stein did commit the specified overt act. The jury returned two of the interrogatories (numbers one and eleven) with a unanimous finding that Stein did not commit the specified act.

[*P35]  The overt acts that the jury found Stein to have committed were:

> On 3/6/12, he instructed Ramga what to say to Mausolf to lure her to the residence in order to facilitate Mausolf's murder.

> On 3/6/12, he instructed Ramga what to do at the residence in order to facilitate Mausolf's murder.

> On 3/6/12, he instructed Ramga what to say to police investigators in order to facilitate Mausolf's murder.

> On 3/6/12, he took a second break from work to meet with Ramga to clarify details of his plan to murder Mausolf.

On 3/7/12, he took a break from work and met with Ramga to place a phone call to Mausolf to commence his plan to lure Mausolf to the residence later that evening for the purpose of killing her.

On 3/7/12, he told Ramga what to say in her phone call to Mausolf to lure her to the residence later that evening.

On 3/7/12, he instructed Ramga what to do at the residence in order to facilitate Mausolf's murder later that evening.

On 3/7/12, he instructed Ramga what to say to police investigators in order to facilitate Mausolf's murder.

On 3/7/12, he met with Ramga and presided over the phone call from Ramga to Mausolf, to commence his plan to kill Mausolf.

**[\*P36]**  The jury found Stein guilty of all four counts. By agreement of both parties, the counts were merged for sentencing purposes. Stein was sentenced to nine years in prison. No fine or restitution was ordered. From his conviction and sentence, Stein appeals.

### III. Stein's Conviction Is Not Against the Manifest Weight of the Evidence

**[\*P37]**  Stein's First Assignment of Error is as follows:

MR. STEIN'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**[\*P38]**  We set forth the manifest-weight standard of review in State v. Szloh, 189 Ohio App.3d 13, 2010 Ohio 3777, 937 N.E.2d 168, ¶ 12 (2d Dist.):

* * * when reviewing a judgment under a manifest-weight standard of review, "'[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.'" *[State v.] Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

**[\*P39]**  Ramga testified that Stein planned Mausolf's murder with her, and agreed with her that he would murder Mausolf. Recordings of her conversations with Stein in which he planned, and agreed to, Mausolf's murder were admitted in evidence. Stein did not testify.

**[\*P40]**  Stein's defense at trial, and his argument on appeal, is that he was entrapped. He argues that Ramga, at the behest of the police, put the idea of planning to murder Mausolf in Stein's mind, and planned to use Stein's willingness to kill Mausolf as a basis for evicting Stein from her home.

**[\*P41]**  In *State v. Doran*, 5 Ohio St.3d 187, 193, 5 Ohio B. 404, 449 N.E.2d 1295 (1983), the Supreme Court of Ohio held that entrapment is an affirmative defense. They defined the defense of entrapment:

> Consequently, where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal. *Sherman [v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)], *supra*, 356 U.S. at 372, 78 S.Ct. at 820; *Sorrells [v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 38 Ohio L. Rep. 326 (1932)], *supra*, 287 U.S. at 442, 53 S.Ct. at 212. However, entrapment is not established when government officials "merely afford opportunities or facilities for the commission of the offense" and it is shown that the accused was predisposed to commit the offense. *Sherman, supra*, 356 U.S. at 372, 78 S.Ct. at 820. *Id*., at 192.

**[\*P42]**  The Supreme Court of Ohio adopted a subjective test for determining a defendant's predisposition to commit the offense, concluding:

Our sole reservation concerning the subjective test involves the scope of admissible evidence on the issue of an accused's predisposition. While evidence relevant to predisposition should be freely admitted, judges should be hesitant to allow evidence of the accused's bad reputation, without more, on the issue of predisposition. Rather, while by no means an exhaustive list, the following matters would certainly be relevant on the issue of predisposition: (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. Under this approach, the evidence on the issue of an accused's predisposition is more reliable than the evidence of the nature of inducement by police agents under the objective test. *Id*.

[*P43]  In applying the *Doran* test for a defendant's predisposition to commit an offense, the Ohio Tenth District Court of Appeals rejected a claim of entrapment, noting that the witness had indicated that the defendant had never expressed an unwillingness to commit the offense, and concluding that the evidence "does not suggest that appellant had to be convinced to engage in this conduct." *State v. Zeune*, 10th Dist. Franklin No. 10AP-1102, 2011 Ohio 5170, ¶ 20.

[*P44]  In the case before us, the jury could easily have found from the evidence that the idea of planning to kill Mausolf originated with Stein, not with Ramga. Ramga so testified, and the recorded conversations between Ramga and Stein are more consistent with the idea of killing Mausolf having originated with Stein, not with Ramga.

[*P45]  But even if one were to conclude that the idea of killing Mausolf was suggested to Stein by Ramga, the recorded conversations clearly show that Stein was not the least bit reticent about killing Mausolf. He never indicated any unwillingness or reluctance to do so.

[*P46]  The jury reasonably concluded that Stein was not entrapped. This is not the exceptional case in which the evidence weighs heavily against conviction. Stein's First Assignment of Error is overruled.

### IV. Stein's Conviction Is Supported by Sufficient Evidence

[*P47]  In part III, above, we have held that Stein's conviction is not against the manifest weight of the evidence. Therefore, it is supported by sufficient evidence, since there is evidence in the record, in the form of Ramga's testimony and the recorded conversations between Ramga and Stein, that, if believed, would persuade a reasonable mind of Stein's guilt beyond reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 263, 574 N.E.2d 492 (1991), superseded on other grounds by constitutional amendment, *see State v. Smith*, 80 Ohio St.3d 89, 1997 Ohio 355, 684 N.E.2d 668. *See also State v. Bailey*, 2d Dist. Montgomery No. 24861, 2012 Ohio 3274, ¶ 25.

[*P48]  Stein's Second Assignment of Error is overruled.

*State v. Stein*, 2013-Ohio-3050, 2013 Ohio App. LEXIS 3101 (2nd Dist. July 12, 2013).  As can be seen, the Court of Appeals did not focus on a particular overt act, but decided there was sufficient evidence on which to convict Stein of every element of the crimes with which he was charged.

The Warden asserts the Second Ground for Relief is procedurally defaulted because Stein did not timely appeal to the Ohio Supreme Court (Return of Writ, Doc. No. 7, PageID 1113-14). Stein argues his claims are not procedurally defaulted because of "equitable tolling," specifically of the time to file is Application for Reopening under Ohio R. App. P. 26(B)(Reply, Doc. No. 9, PageID 1150-54).  That argument will be dealt with below as it applies to claims which were raised in the 26(B) Application.  Essentially, the Magistrate Judge concludes the doctrine of equitable tolling as enunciated by the United States Supreme Court does not save Stein's 26(B) Application from the default of being untimely filed.  But even if it applied there, it would not apply to Stein's failure to appeal to the Ohio Supreme Court from the Second District's decision on direct appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting*

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

In this case Ohio has a relevant procedural rule, to wit, that appeals to the Supreme Court of Ohio must be taken within forty-five days of the judgment in the court of appeals.  S. Ct. Prac. R. 7.01(A)(1).  The Sixth Circuit had held this procedural rule is an adequate and independent state ground of decision.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)(citations omitted).  Although the rule has not been directly enforced against Stein because he never attempted a direct appeal, there is no doubt it would be enforced if an appeal were attempted now or had been at any time after the forty-five days expired.  Stein has offered no suggested excusing cause and prejudice.  Therefore the Second Ground for Relief should be dismissed with prejudice as procedurally defaulted.

**Ground Three:  Unconstitutional Sentence**

In his Third Ground for Relief, Stein asserts his sentence of nine years is unconstitutional

because the State offered to let him plead guilty to the first count of the indictment for an agreed sentence of three years.

This claim was not presented at all on direct appeal.  Stein's Third Assignment of Error argued that the trial court erred in sentencing him to any imprisonment term at all because of the Ohio statutes regulating the terms of prison sentences, particularly Ohio Revised Code § 2929.11 and 2929.12 (Appellant's Brief, Doc. No. 6-1, PageID 239).

In his Reply, Stein does not reference any place where this claim was raised before he filed his Petition in this Court.  The Third Ground for Relief should therefore be dismissed with prejudice as procedurally defaulted for failure to present it to the Ohio courts.

**Ground Four:  Expansion of the State's Motion in Limine**

In his Fourth Ground for Relief, Stein asserts the trial court deprived him of his rights under the Confrontation Clause by not permitting evidence of the "extensive histories of psychiatric disorders that made questions into their [witnesses Ramga and Mausolf] history of mental disorders, use and abuse of psychotropic medication critical to their credibility and the establishment of motive for their testimony."  (Petition, Doc. No. 1-2, PageID 14.)

This claim is based on facts of record at the time of the direct appeal, but is not included in the appeal.  On that basis, the Warden asserts it is procedurally defaulted (Return of Writ, Doc. No. 7, PageID 1117).[2]  Ohio has a relevant procedural rule which is that constitutional claims which are based on the record and therefore could be raised on direct appeal must be raised in that manner or they are barred from being raised later by *res judicata.  State v. Perry*,

---

[2] The Warden also asserts it is not cognizable because it relates only to the admission of evidence, but the Court finds that, as pled in the Petition, Ground Four states a Confrontation Clause claim.

10 Ohio St. 2d 175 (1967).  The Sixth Circuit has repeatedly held that Ohio's doctrine of *res judicata* in criminal cases, enunciated in *Perry,* is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).  Therefore Stein's Fourth Ground for Relief is procedurally defaulted unless he can prove excusing cause and prejudice.

Stein makes no explicit argument about excusing this default, but implicitly argues that the omission of this claim on direct appeal is the result of ineffective assistance of appellate counsel:  the claim was included as his First [Omitted] Assignment of Error in his 26(B) Application (Doc. No. 6-1, PageID 324).

Ineffective assistance of appellate counsel can act as excusing cause for a procedural default, but only if the ineffective assistance of appellate counsel claim itself is not procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).  A 26(B) application is the only method for raising an ineffective assistance of appellate counsel claim in the Ohio courts and Ohio requires that such an application be filed within ninety days "from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

Stein did not file within the required ninety days.  The Second District's decision was filed July 12, 2013; the ninetieth day thereafter was October 10, 2013.  Stein did not file the Application until February 5, 2014, which is 208 days after the appellate judgment  (See Doc. 6-1, PageID 321).

The Second District found Stein had made the following purported showing of good cause for is delay:

> Since the Appellant's attorney refused to correspond with him and
> ignored his repeated letters and phone calls, the Appellant wrote
> the Ohio Public Defender's Office to find out the current status of
> his case on July 8, 2013 (before the appellate judgment was filed).
> On July 29, 2013, the Ohio Public Defender's Office wrote that
> they would review the Appellant's case for a possible 26(B)
> motion. On October 9, 2013, attorney Terrence Scott with the Ohio
> Public Defender's Office informed the Appellant that the Ohio
> Public Defender's Office would not be representing him in the
> filing of a motion to reopen his direct appeal and mailed him the
> portion of his trial record that his appellate counsel had requested.

(Quoted in *State v. Stein*, Case No. 25432 (2nd Dist. Mar. 20, 2014)((unreported; copy at Doc. No. 6-1, PageID 380-81.)   The Second District found that this was arguably an appropriate accounting for the delay until October 9, 2013, but "he has not shown good cause for the delay from October 9, 2013, until the filing of his application of February 5, 2014, a period of 117 days.  We conclude, therefore, that he has not shown good cause for filing his application out of time."  *Id.*  at PageID 381.

Stein claims that recognizing this defense

> requires that one completely ignore the whole body of evidence
> that Stein has submitted along with his application for reopening
> under App. R. 26(B) as well as this application for a writ of habeas
> corpus, including letters to his appellate counsel, letters to and
> from the Ohio Public Defender's Office, a letter to the Ohio
> Supreme Court Disciplinary Counsel, Ross Correctional
> Institution's Library schedule in conjunction with an inmate
> tracking sheet (to show the Petitioner's location during the time in
> question), kites to the librarian, and compliants/[sic] grievances
> regarding the library.

(Reply, Doc. No. 9, PageID 1150-51.)  Having examined the record, the Court finds none of this supposed documentation except two letters from the Ohio Public Defender's Office.  Those letters tell him, *inter alia*, that his 26(B) Application is due by October 10, 2013 (See Doc. No. 6-1, PageID 347).

The question of what constitutes good cause under Ohio R. App. P. 26(B) is a question of Ohio law which this Court is not empowered to second guess. In particular, this Court is not authorized to impose the doctrine of equitable tolling on the Ohio courts. As Stein has noted, the United States Supreme Court has recognized the application of that doctrine to excuse a late filing of a habeas corpus petition in federal court as an equitable exception to the federal statute of limitations in 28 U.S.C. § 2244. *Holland v. Florida*, 560 U.S. 631 (2010). But the Supreme Court has in no way imposed equitable tolling on the States as a constitutional requirement.

As an alternative to equitable tolling, Stein argues ineffective assistance of appellate counsel on direct appeal can excuse his tardy filing of the 26(B) Application (Reply, Doc. No. 9, PageID 1154). However, ineffective assistance of counsel will only act as excusing cause if it occurs in a proceeding in which a criminal defendant is entitled to constitutionally effective assistance. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner,* 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002). The State's obligation to provide counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).

Stein argues that the Supreme Court has extended this principle in *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013). It is unclear whether *Trevino* applies at all to ineffective assistance of trial counsel claims in Ohio. *McGuire v. Warden*, 738 F.3d 741, 751-52 (6th Cir. 2013). In any event, if it does, it only applies to excuse procedural default in initial review collateral proceedings of claims of ineffective assistance of trial counsel, not claims of ineffective assistance of appellate counsel.

Because Stein procedurally defaulted in is presentation of his ineffective assistance of

appellate counsel claims to the Ohio courts, he cannot use those claims to excuse the procedural default of failing to present claims on direct appeal.  Therefore his Fourth Ground for Relief should be dismissed with prejudice as procedurally defaulted.

## Ground Five:  Perjured testimony of Witnesses Ramga and Thompson

In his Fifth Ground for Relief, Stein claims that witnesses Ramga and Thompson perjured themselves when they testified that "the recordings and transcripts presented to the jury were complete and accurate copies of the originals."  (Petition, Doc. No. 1-2, PageID 15.)

The Warden asserts this claim is procedurally defaulted because it was never presented to the state courts until Stein's untimely 26(B) Application (Return of Writ, Doc. No. 7, PageID 1118).

Stein makes no separate response to this defense and the Court finds that it is well taken on the same basis as Ground Four.  To the extent this claim relies on material outside the record (i.e., some proof of what the originals contained), Stein has procedurally defaulted by never filing a petition for post-conviction relief under Ohio Revised Code § 2953.21.  The Fifth Ground for Relief should therefore be dismissed with prejudice as procedurally defaulted.

## Ground Six:  Prosecutorial Misconduct in Closing Argument

In Ground Six, Stein claims he was deprived of a fair trial by the prosecutor's misleading remarks in closing argument (Petition, Doc. No. 1-2, PageID 16).  The Warden asserts this claim is procedurally defaulted by Stein's failure to raise it on direct appeal.

29

This Ground for Relief is in fact procedurally defaulted on the same basis as Ground Four and should be dismissed with prejudice for that reason.

**Ground Seven:  Insufficient Evidence of an Overt Act in Furtherance of the Conspiracy by Stein or a Co-Conspirator.**

In his Seventh Ground for Relief, Stein asserts the State failed to prove an overt act in furtherance of the conspiracy by himself or a co-conspirator (Petition,  Doc. No. 1-2, PageID 17).

The Warden asserts this claim is procedurally defaulted because it was not presented on direct appeal, but the Magistrate Judge disagrees.  The Second Assignment of Error on direct appeal is appropriately read as claiming the State failed to produce sufficient evidence on all elements of the charged offenses.  However, as noted above with respect to Ground Two, the claim was procedurally defaulted thereafter by not appealing to the Ohio Supreme Court.

Alternatively, the Second District decided this claim on the merits and found a number of overt acts committed by Stein.  Those findings are not an unreasonable determination of the facts based on the evidence presented and are therefore entitled to deference under 28 U.S.C. § 2254(e)(1).

Ground Seven should therefore be dismissed with prejudice.

**Ground Eight:  Admission of Prejudicial Testimony**

In his Eighth Ground for Relief, Stein asserts he was deprived of a fair trial when the trial

judge allowed testimony by State's witnesses that Stein had filed false reports with police about being harassed by Ms. Mausolf (Petition, Doc. No. 1-2, PageID 18).  The Warden asserts Ground Eight fails to state a claim under the Constitution and is also procedurally defaulted.

Stein makes no response specifically directed to Ground Eight and the Court finds, on the authority cited by the Warden, that this claim is not cognizable in federal habeas.  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).  Furthermore, because it was available to be raised on direct appeal but was not, it is procedurally defaulted on the same basis as Ground Four.

Ground Eight should be dismissed with prejudice.


**Ground Nine:  Refusal to Allow Juror Note Taking**


In his Ninth Ground for Relief, Stein asserts the trial judge deprived him of his constitutional rights by not allowing the jury to take notes (Petition, Doc. No. 1-2, PageID 19). The Warden correctly asserts the United States Supreme Court has never held that a criminal defendant has a due process right to have jurors take notes of the testimony.  Furthermore, this claim was never presented to the Ohio courts and is therefore procedurally defaulted.  The Ninth Ground for Relief should be dismissed with prejudice.


**Ground Ten:  Ineffective Assistance of Trial Counsel for Failure to Investigate**


In his Tenth Ground for Relief, Stein asserts he received ineffective assistance of trial counsel when his trial attorney failed to subpoena Stein's medical records or the cellphone text messages of Ms. Ramga and Ms. Mausolf (Petition, Doc. No. 1-2, PageID 20).

The Warden asserts this claim is procedurally defaulted.  To the extent it relies on information which is not in the direct appeal record – the contents of the unsubpoenaed records – this claim is procedurally defaulted by Stein's failure ever to file a petition for post-conviction relief under Ohio Revised Code § 2953.21.  Ground Ten should therefore be dismissed with prejudice.

## Ground Eleven:  Defective Indictment

In is Eleventh Ground for Relief, Stein asserts the indictment is defective because it alleges he conspired with Ms. Ramga and because it is not signed by the grand jury foreman (Petition, Doc. No. 1-2, PageID 21).  The Indictment is in fact signed (Doc. No. 6-1, PageID 96).

As the Warden correctly points out, there is no federal constitutional right to indictment by a grand jury in state court cases.  *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975).  All that is required by the Constitution is a charging document that gives a defendant adequate notice of what he must defend against, and Stein makes no claim of lack of adequate notice.

This claim is also procedurally defaulted on the same basis as Ground Four.

Ground Eleven should be dismissed with prejudice.

## Grounds Twelve and Thirteen :  Unconstitutional Seizure of Evidence

In his Twelfth and Thirteenth Grounds for Relief, Stein asserts that evidence that was seized from him without a search warrant or beyond the scope of the warrant that was issued,

violated his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments (Petition, Doc. No. 1-2, PageID 22).

More than fifty years ago, in *Mapp v. Ohio*, 367 U.S. 643 (1961), the Supreme Court adopted the rule that evidence seized in violation of the Fourth Amendment was, on proper motion, required to be excluded from evidence.  That rule had previously been imposed on the federal courts and in *Mapp* the Supreme Court extended that rule to the States under the Fourteenth Amendment.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.  *Stone v. Powell,* 428 U.S. 465 (1976).  *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.   The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits.  *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).  The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.  The *Stone v. Powell* limitation does not apply to evidence obtained in violation of the Fifth Amendment, but the Petition does not assert any Fifth Amendment violations.

The record shows that Stein's trial attorney did file a motion to suppress raising both Fourth and Fifth Amendment claims (Doc. No. 6-1, PageID 100-104).  As Stein's counsel requested, an oral hearing was held on the motion. Judge Huffman wrote a sixteen-page decision overruling the motion. *Id.*  at  PageID 112-27.  However, no suppression issues were raised on direct appeal.  As already noted with respect to a number of Grounds for Relief above, claims which could have been raised on direct appeal but were not thus raised are procedurally defaulted.

Therefore Grounds Twelve and Thirteen should be dismissed with prejudice as barred by *Stone v. Powell* and as procedurally defaulted.


**Ground Fourteen:  Lack of Notarizatrion of the Complaint Signed by Detective Ring**


Stein claims the original complaint filed against him by Detective Ring was not notarized.  The Constitution of the United States does not require such notarization.  To the extent the Constitution requires a probable cause finding before an arrest warrant is issued, that finding is provided by the Indictment itself.  In any event, this Ground for Relief is also procedurally defaulted.


**Ground Fifteen:  Ineffective Assistance of Trial Counsel**

In his Fifteenth Ground for Relief, Stein asserts he received ineffective assistance of trial counsel when his trial attorney failed to move to suppress witness statements of Ms. Ramga and Ms. Mausolf (Petition, Doc. No. 1-2, PageID 25).

This Ground for Relief fails to state a claim upon which habeas corpus relief can be granted because there is no procedure available under Ohio law for "suppressing" statements made to police by witnesses who will testify live at trial. It cannot, therefore, have been deficient performance to fail to file such a motion. See *Strickland v. Washington,* 466 U.S. 668 (1984), on the standard for determining ineffective assistance of trial counsel. Moreover this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Sixteen: Improper Victim Impact Statement**

In his Sixteenth Ground for Relief, Stein complains of the trial court's allowing Ms. Ramga to make a victim impact statement. The Warden responds that the United States Supreme Court has never held that a victim impact statement under these circumstances is unconstitutional. Moreover this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Seventeen: Allowance of Hearsay, Speculation, and Leading Questions**

In his Seventeenth Ground for Relief, Stein complains that the trial court allowed hearsay, speculation, and leading questions (Petition, Doc. No. 1-2, PageID 27). As the Warden correctly points out, possible errors of state evidence law are not cognizable in habeas corpus.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Moreover this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Eighteen:  Failure to Maintain a Copy of the Jury Instructions and Verdicts**

In his Eighteenth Ground for Relief, Stein complains of the trial court's failure to maintain a copy of the jury instructions and the verdict forms for review by the court of appeals (Petition, Doc. No. 1-2, PageID 28).  As to the verdicts, this claim is belied by the record.  See Doc. No. 6-1, PageID 163-210.

To the extent Stein is complaining of a violation of Ohio Revised Code § 2945.10(G), he is raising a claim of Ohio law which is not cognizable in habeas corpus.  Moreover this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Nineteen:  Admission of Evidence Which Had Been Tampered With**

In his Nineteenth Ground for Relief, Stein claims the trial court admitted evidence which had been tampered with, i.e., that the wire recordings and transcripts of the recordings offered at trial were different from those produced in discovery and somehow withheld exculpatory evidence from the jury.

Stein fails to explain how this violated any federal constitutional right.  If the State

presented recordings and transcripts of recordings which omitted portions that were exculpatory, it was fully open to defense counsel to argue for admission of the balance of the recordings/documents under the rule of completeness.  If he did not do so and failure to do so was ineffective assistance of trial counsel, then it was incumbent on Stein to place those matters in the record by a petition for post-conviction relief.  He never filed such a petition and says in his Reply that he relies solely on the trial transcripts (Reply, Doc. No. 9, PageID 1177, citing PageID 328-29).  Those are pages of his Rule 26(B) Application in which he refers to an admission by the prosecutor to changing the transcripts by omitting "Det. Ring and Ms. Ramga's phone conversations. . ."  Again, if those conversations were exculpatory, defense counsel could have moved to include them, but did not.  There is no constitutional violation shown here by  the State's conduct.

Moreover this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Twenty:  Failure to Investigate Possible Juror Misconduct**

In his Twentieth Ground for Relief, Stein asserts his constitutional rights were violated when the trial court refused to investigate possible juror misconduct (Petition, Doc. No. 1-2, PageID 30).  The Warden correctly argues this Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Twenty-One:  Denial of Motion for Judgment of Acquittal**

In his Twenty-First Ground for Relief, Stein argues his constitutional rights were violated when his Motion for Judgment of Acquittal was denied (Petition, Doc. No. 1-2, PageID 31).  A motion for judgment of acquittal raises the claim that the evidence does not support a conviction. This is the same claim raised in Ground Two and should be dismissed with prejudice on the same basis.

**Ground Twenty-Two:  Denial of a Mistrial**

In his Twenty-Second Ground for Relief, Stein claims his constitutional rights were violated when the trial court refused to grant a mistrial on the basis of the asserted juror misconduct referred to in Ground Nineteen.  This Ground for Relief is procedurally defaulted on the same basis as Ground Four.

**Ground Twenty-Three:  Failure of the Court of Appeals to Reconsider its Rule 26(B) Decision**

In his last Ground for Relief,  Stein claims the Second District Court of Appeals denied him access to the courts when it refused to reconsider its decision on his 26(B) Application (Petition, Doc. No. 1-2, PageID 33).

First of all, this claim is belied by the record.  The Second District did reconsider its 26(B) decision and issued a three-page decision denying the requested relief (Doc. No. 6-1, PageID 398-400).  Just because Stein did not get the result he wanted does not mean the court of appeals did not reconsider.

Secondly, there is no federal constitutional right to appeal in a state criminal case in any event, much less a right to reconsideration of a decision denying a motion to reopen an appeal.

38

*McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d

339, 355 (6th Cir. 2005).  "Due process does not require a State to provide appellate process at

all."  *Goeke v. Branch*, 514 U.S. 115, 120 (1995).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be

dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.

December 9, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by one of the methods of service listed in Fed. R. Civ.
P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections. If the Report
and Recommendations are based in whole or in part upon matters occurring of record at an oral

39

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).