# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SAMUEL C. STEIN,

        Petitioner,      :      Case No. 3:14-cv-274

  - vs -                          District Judge Thomas M. Rose
                                    Magistrate Judge Michael R. Merz

MARK HOOKS, Warden,

                             :

        Respondent.

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

        This habeas corpus case is before the Court on Petitioner Stein's Objections (Doc. No. 20 to the Magistrate Judge's Supplemental Report and Recommendations (Doc. No. 19).  Judge Rose has recommitted the case for reconsideration in light of the Objections (Doc. No. 21).  To obtain additional evidence regarding Stein's complaints about the Court's Order that he file papers by way of the digital sender at Ross Correctional Institution, the Magistrate Judge ordered the record expanded (Doc. No. 23) and the Warden has timely complied with that order (Doc. No. 24).  The case is therefore ripe for decision on Judge Rose's recommittal.

        The Supplemental Report and Recommendations merely considered four additional exhibits added to the record on Stein's request and concluded that they did not prove either that the Second District Court of Appeals' decision in this case "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" or "that either witness Ramga or witness Thompson committed perjury." (Supplemental R&R, Doc.

No. 19, PageID 1292.) Based on that finding, the Magistrate Judge again recommended that the Petition be dismissed with prejudice. Stein's Objections address both prior Reports.

**Filing Status of Stein's Objections**

The Supplemental Report was filed January 8, 2015, and mailed to Stein by regular United States mail by the Clerk on the same day (Doc. No. 19). Under Fed. R. Civ. P. 72(b)(2), Stein had fourteen days to "file and serve" objections; that time was extended by three days by Fed. R. Civ. P. 6(d) because Stein was served by mail. As has been this Court's standard practice for more than thirty years, a Notice Regarding Objections was appended to the Supplemental Report, advising Stein of his right to object and of the time limits on doing so (Doc. No. 19, PageID 1293). That made Stein's Objections due on January 26, 2015.

Because of prior disputes about the timeliness of Stein's filings, the Court on December 22, 2014, ordered Stein to use the scanning facility ("Digital Sender") at Ross Correctional "[f]or all future filings in this case." (Decision and Order, Doc. No. 13, PageID 1263.) Stein moved for reconsideration[1] (Doc. No. 17) and the Court reiterated its order (Order on Reconsideration, Doc. No. 18).

Stein's Objections (Doc. No. 20) contain the following Certificate of Service:

> I hereby swear under penalty of perjury that the foregoing "Objection to the Report and Recommendation" was placed in the prison's mailing system, addressed to the Clerk of this court, via First-Class U.S. Mail, postage prepaid, on this 17th day of January, 2015. I hereby certify that a true and accurate copy of the foregoing was sent by regular U.S. Mail, First Class postage prepaid, to Mary Anne Reese, Counsel for the Respondent, at 441

---

[1] In his initial act of defiance of the December 22, 2014, Order, Stein sent his Motion for Reconsideration to the Court by ordinary mail and filed a Certificate of Service that he had also mailed it to Respondent's counsel on December 27, 2014. (Doc. No. 17, PageID 1287.)

2

>Vine St., Suite 1600, Cincinnati, OH, 45202, on this 17th day of January, 2015.

*Id.* at PageID 1307. Although the Certificate purports to be made under oath, it is not notarized. Moreover, the Warden's counsel has proved, beyond any doubt, that the Certificate is false. The Warden's counsel declares under penalty of perjury that she received the Objections in four separate envelopes, postmarked on January 27, 28, and 29, 2015 (Notice, Doc. No. 24-3, PageID 1366). Unlike Stein, she documents her factual assertions by attaching copies of the envelopes showing postmarks at least ten days later than the date on which Stein claims he mailed the Objections. *Id.* at PageID 1377, 1378, 1382, 1386.

Stein's most recent filing shows the wisdom of the Court's digital scanner project and the need to make it mandatory in this case. Stein has plainly lied to the Court about his service of the Objections on the Warden's counsel, reinforcing the Court's doubt of the truth of his prior assertions of service (see Order on Reconsideration, Doc. No. 18, PageID 1288, quoting Decision and Order, Doc. No. 13, PageID 1263). Moreover, Stein's claim that he mailed his Objections to this Court on January 17, 2015 (Objections, Doc. No. 20, PageID 1307) is refuted by the postmark on the envelope in which they were received, which is January 26, 2015, nine days later than the date on which Stein swears he mailed them (Doc. No. 22).

Aside from the date of mailing, Stein's Objections were filed by mail in defiance of this Court's prior Orders. His defiance places Stein in contempt of this Court. In his Objections he asserts that the Magistrate Judge was not legally empowered to enter the Order requiring him to use the digital scanner and that his Motion for Reconsideration of that Order should have been decided by Judge Rose rather than the Magistrate Judge. However, the Order to use the digital scanner is plainly a pre-trial non-dispositive order which a Magistrate Judge is empowered to

enter in a referred case. Although a litigant has a right to review of such an order by a District Judge, S. D. Ohio Civ. R. 72.3 provides that a Magistrate Judge's orders on non-dispositive motions remain in effect unless stayed or overruled by a District Judge. Because the order is within the jurisdiction of a magistrate judge, it must be obeyed until reversed, under penalty of contempt. *Walker v. City of Birmingham*, 388 U.S. 307 (1967).

Stein asserts that the Order to file by use of the scanning facility is contrary to clearly established Supreme Court law, citing *Houston v. Lack,* 487 U.S. 266 (1988). *Houston* is usually cited as adopting the "mailbox rule," i.e., that a prisoner files a paper with the relevant court when he deposits it in the prison mailbox. In fact, the Supreme Court held in *Houston* that an inmate "files" a notice of appeal "at the time [it is] delivered to the prison authorities for forwarding to the court clerk." *Id.* at 276. Justice Brennan's majority opinion presumed that dropping a filing in a prison mailbox was the only way a prisoner had of sending a filing to a court.

> The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox -- he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

487 U.S. at 275. Thus the Supreme Court in *Houston* assumed a set of facts which is not present in this case or reflective of the practice at Ross Correctional Institution. In defense of his preference for mailing, Stein states he can deposit his papers in a public mailbox without processing them through the prison authorities and "[e]nvelopes are available and the mailbox is right outside the chow hall where it can be accessed daily." (Objections, Doc. No. 20, PageID

4

1304.) This is consistent with the Declaration of Lieutenant William Faught at Ross Correctional that no log is kept by the institution of inmates' outgoing legal mail and that "[i]f an inmate's outgoing letter fits in the mailbox and if it contains sufficient postage, however, there would be no need to generate a cash slip or indigent mail record, and so no record of the inmate's outgoing mailing would exist." (Notice, Doc. No. 24-4, PageID 1388, ¶¶ 9-10.)

A litigant who is not confined satisfies his or her obligation to file something with the Clerk by getting it to the Clerk on or before the date the filing is due. *Houston v. Lack, supra*, relieves a prisoner of the duty of delivering a filing to the Court by permitting the prisoner to deposit the filing with the prison authorities on or before the date the filing is due. Stein did not satisfy the *Houston v. Lack* rule because he did not deliver his Objections to the prison authorities, but rather deposited them in the United States mail. That deposit did not satisfy the filing requirement in Fed. R. Civ. P. 72 because it was not done in time to have the Objections reach the Clerk by the due date of January 26, 2015. Instead, Stein mailed the Objections the date they were due and they did not arrive until two days later. Moreover, Stein did not satisfy his obligation under Fed. R. Civ. P. 5 to serve a copy of the Objections on Warden's counsel on the same date as it is due to be filed: the warden's counsel has proved that Stein sent her the Objections (without the attachment) in four separate mailings made on January 27, 28, and 29, 2015 (see Notice, Doc. No. 24-3).

Stein could have avoided the cost of postage, the risk of delays in the mail, and his ultimate failure to file and serve if he had used the digital sender. There is no cost to an inmate, there is no delay,[2] and there is verification of when the document is scanned and sent. Because he willfully refused to use the digital scanner when ordered to do so and did not otherwise file or

---

[2] The Ross Correctional Librarian informs the Court there is no backlog. (Declaration of Andrew Hart, Doc. No. 24-5, PageID 1399-1400.)

5

serve his Objections on time, they should be STRICKEN.

**Alternative Analysis on the Merits**

      **Procedural Default Issues**

Should the Court decide to make an alternative decision on the merits of the case, the Magistrate Judge offers the following analysis.

Stein was convicted in the Montgomery County Common Pleas Court of conspiring to murder the mother of his child. Judge Huffman then sentenced him to the nine year sentence he is now serving. His Petition in this case raises twenty-three Grounds for Relief which were all found in the original Report to be without merit and, in almost every instance, barred by Stein's procedural default in presenting them to the Ohio courts.

To facilitate District Court review, this Supplemental Report will address the issues raised in Stein's Objections in the order in which he raises them.

**1.    Lack of Counsel in the Delayed Reopening Proceeding**

Stein's direct appeal concluded on July 12, 2013. *State v. Stein*, 2013-Ohio-3050, 2013 Ohio App. LEXIS 3101 (2nd Dist. July 12, 2013). Stein did not file a timely appeal to the Supreme Court of Ohio. Instead, on February 5, 2014, Stein filed a delayed application to reopen the appeal pursuant to Ohio R. App. P. 26(B). The Second District denied the application as untimely. *State v. Stein,* Case No. 25432 (2nd Dist. Mar. 20, 2014)(unreported, copy at Notice

6

of Filing, Doc. No. 6-1, PageID 380-82).

The Report found that Grounds for Relief Four, Five, Six, Eight, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, and Twenty-two were based on facts which were of record at the time of direct appeal but not raised in that proceeding and were therefore barred by Ohio's criminal *res judicata* doctrine adopted in *State v. Perry*, 10 Ohio St. 2d 175 (1967)(Report, Doc. No. 11, PageID 1241-42).

Stein claims the Ohio Supreme Court held in *State v. Murnahan,* 63 Ohio St. 3d 60 (1992), that "*res judicata* is not applicable to an application to reopen a direct appeal because of the ineffective assistance of appellate counsel." (Objections, Doc. No. 20, PageID 1295.) What the Ohio Supreme Court actually held in *Murnahan* was that post-conviction relief under Ohio Rev. Code § 2953.21 is not available as a remedy for ineffective assistance of appellate counsel. Instead, it held that issues of ineffective assistance of appellate counsel can be raised in an application for reconsideration to the court of appeals or a direct appeal to the Ohio Supreme Court under Article IV, Sec. 2(B)(2)(a)(iii). The Supreme Court in *Murnahan* also directed its Advisory committee on Rules to codify a provision for litigating ineffective assistance of appellate counsel claims which it did in Appellate Rule 26(B). To the extent *Murnahan* set out a procedure for raising ineffective assistance of appellate counsel claims, it was applicable only until 26(B) was adopted. And the court never held *res judicata* was inapplicable to bar claims eventually raised in a 26(B) application. Ohio's *res judicata* doctrine remains fully applicable to this case and bars any claims which depend on the appellate record but were not raised on direct appeal.

Stein relies on ineffective assistance of appellate counsel to excuse his procedural default in not raising many of his grounds on direct appeal. But the Report notes that before this excuse

7

can be used, a habeas petitioner must first exhaust and not default the ineffective assistance of appellate counsel claim in the state courts (Report, Doc. No. 11, PageID 1242, citing *Edwards v. Carpenter*, 529 U.S. 446 (2000)). Under Ohio App. R. 26(B) a claim of ineffective assistance of appellate counsel must be filed within ninety days of the appellate judgment. Stein's 26(B) application was not filed until 208 days after judgment and the Second District found the filing was untimely and the delay unexcused. *Id*. at PageID 1242-43. The Report further held the question whether the delay was excused was a question of state law on which this Court could not second guess the Ohio courts of appeals. *Id*. at PageID 1244.

Stein objects that the habeas corpus statute, 28 U.S.C. § 2254(d), empowers this Court to overturn state court decisions that are unreasonable and contrary to clearly established Supreme Court precedent (Objections, Doc. No. 20, PageID 1295). To the contrary, the habeas statute only authorizes federal courts to overturn state court decisions on questions of federal constitutional law. Whether or not a state prisoner has complied with state rules for raising a claim of ineffective assistance of appellate counsel is purely a question of state law. To put it another way, the United States Constitution does not impose on the States any particular method for litigating those claims.

Stein argues that "Ohio already has the principle of equitable tolling in the filing of a delayed application to reopen under App. R. 26(B)." (Objections, Doc. No. 20, PageID 1296.) That is true, but the Ohio courts are entitled to their independent judgment on whether just cause for delay has been shown. Nothing gives this Court the power to say whether they got it right or wrong. The federal courts have repeatedly held that the time limit on 26(B) applications is an adequate and independent Ohio procedural rule. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir.

8

2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Stein asserts that the recent Supreme Court decisions in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), mean that the failure of the State to provide Stein with effective counsel in his 26(B) proceeding excuses his failure to present the defaulted claims on direct appeal (Objections, Doc. No. 20, PageID 1296). Indeed, he claims his situation is "virtually identical to *Martinez* and *Trevino*." *Id*.

In *Martinez*, the Supreme Court held:

> [W]hen a State requires a prisoner to raise an **ineffective-assistance-of-trial-counsel claim** in a **collateral** proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

132 S. Ct. at 1318-19 (emphasis added). Most of the claims the Report found to be procedurally defaulted were trial court error claims, not ineffective assistance of trial counsel claims. Most of them depend on evidence of record and therefore should have been raised on direct appeal, rather than in a collateral proceeding. Stein had appointed counsel on direct appeal. To the extent he asserts his claims were not raised because he had ineffective appellate counsel, he has forfeited

9

that claim by filling his 26(B) too late as concluded above. The Sixth Circuit has expressly held that *Martinez* does not apply to excuse procedural default in presenting an ineffective assistance of appellate counsel claim. *Hodges v. Colson,* 711 F.3d 589, 603 (6th Cir. 2013).

In sum, Stein has not excused his procedural default failing to raise most of his claims on direct appeal.

### 2. Failure to File a Petition for Post-Conviction Relief

The Report concludes Grounds for Relief Five, Ten, and Nineteen were procedurally defaulted because they depend on evidence outside the record and Stein never filed a petition for post-conviction relief under Ohio Rev. Code § 2953.21 (Doc. No. 11, PageID 1245, 1248, 1253) Stein argues he could not have filed a post-conviction petition because he had appellate counsel and Ohio forbids hybrid representation.

Ohio's prohibition on hybrid representation only applies to prevent that representation in the same proceeding. The appointment of counsel for direct appeal does not encompass an appointment for post-conviction and this Court is unaware of any Ohio authority holding that a represented appellant cannot file a post-conviction petition *pro se*. Stein cites none.

### 3. Failure to File a Direct Appeal to the Supreme Court of Ohio

On several claims the Report found a procedural default in Stein's failure to take a direct appeal to the Ohio Supreme Court from the direct appeal decision of the Second District (Grounds for Relief Two and Seven, Doc. No. 11, PageID 1240, 1246). Stein argues this failure

is excused by his filing the 26(B) application and by his appeal to the Ohio Supreme Court from denial of that application.  However, he cites no law holding that either of these applications can substitute for direct appeal.  The whole purpose of a 26(B) application is to raise claims that were omitted on direct appeal, not to reargue claims that were presented but not accepted.  The same limitation applies to appeal from denial of a 26(B) application.

**Individual Grounds for Relief**

Stein's individual Grounds for Relief are dealt with here only to the extent that his Objections raise additional points requiring comment.

### Ground Eight: Admission of Prejudicial Testimony

In his Eighth Ground for Relief, Stein asserts he was deprived of a fair trial when the trial judge allowed testimony by State's witnesses that Stein had filed false reports with police about being harassed by Ms. Mausolf (Petition, Doc. No. 1-2, PageID 18). The Report concluded this Ground was procedurally defaulted, but also not cognizable as a federal constitutional claim. (Report, Doc. No. 11, PageID 1247, citing *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th 2003)).

Stein objects that *Bugh* only addressed the admission of prior bad acts under the Federal Rules of Evidence which do not apply in state criminal proceedings (Objections, Doc. No. 20, PageID 1300).  He relies instead on *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993).  *McKinney* is, of course, not precedent from the Sixth Circuit.  More importantly, it was decided before the Antiterrorism and Effective Death Penalty Act which limited our authority to grant the writ to

cases where the state decision was contrary to or an unreasonable application of United States Supreme Court precedent. *McKinney* does not cite any Supreme Court precedent which would be offended by the evidence admitted here.

Stein also misreads *Bugh v. Mitchell, supra*. There the Sixth Circuit expressly held "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*, 502 U.S. 62 (1991).

**Ground Nine:  Juror Note-Taking**

In his Ninth Ground for Relief, Stein asserts the trial judge deprived him of his constitutional rights by not allowing the jury to take notes (Petition, Doc. No. 1-2, PageID 19). The Report rejected this claim as procedurally defaulted, but also noted that no Supreme Court case law held that there was a constitutional right to have jurors take notes.  (Report, Doc. No. 11, PageID 1247).

Stein objects, but merely says "Ohio jurors are in fact allowed to take notes in complex cases under state rules." (Objections, Doc. No. 20, PageID 1300.)  Stein cites no authority.  The Ohio rule in question is Ohio R. Crim. P. 24(I) which provides that an Ohio trial "court, after providing appropriate cautionary instructions, may permit jurors who wish to do so to take notes during a trial." The rule gives the trial judge discretion; it does not purport to create any right in a criminal defendant to insist that jurors be permitted to take notes.  And in any event, even if it were a state-created procedural right of a defendant, that would not make it required as a matter

12

of constitutional law. *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993),

**Grounds Twelve and Thirteen: Unconstitutional Seizure of Evidence**

In Grounds Twelve and Thirteen, Stein asserts evidence was seized from him unconstitutionally. Although he labels these Grounds as arising under the Fourth, Fifth, Sixth, and Fourteenth Amendments, in fact such claims sound only in Fourth Amendment terms, as applied to the States under the Fourteenth Amendment. The Report rejected the claims as procedurally defaulted and also as non-cognizable under *Stone v. Powell,* 428 U.S. 465 (1976).

Stein objects (Doc. No. 20, PageID 1301) that his trial counsel was ineffective for not appealing Judge Huffman's denial of the motion to suppress, but the obligation to raise issues on appeal falls on the appellate attorney, not the trial attorney.

**Ground Seventeen: Allowance of Hearsay, Speculation, and Leading Questions**

In his Seventeenth Ground for Relief, Stein complains that the trial court allowedhearsay, speculation, and leading questions (Petition, Doc. No. 1-2, PageID 27). The Report concluded this Ground for Relief was both procedurally defaulted and non-cognizable because it raised only state evidentiary law objections (Report, Doc. No. 11, PageID 1251-52). Stein objects that violation of a state evidentiary rule can also be a violation of due process when it denies fundamental fairness (Objections, Doc. No. 20, PageID 1301, citing *Walker v. Engle,* 703 F.2d 959 (6th Cir. 1983)).

Stein is correct that where an evidentiary error is so egregious that it results in a denial of

fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000). Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly. *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)(*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000), *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The Supreme Court has defined very narrowly the category of infractions that violate fundamental fairness. *Bey v. Bagley*, 500 F.3d 514 (6th Cir. 2007), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990)(Identification from a trial which resulted in an acquittal could be introduced at second trial for similarities.) Stein has not shown that any of the evidentiary problems of which he complains comes within that narrow class of evidentiary violations which renders a trial fundamentally unfair.

**Ground Nineteen: Admission of Evidence Which Had Been Tampered With**

In his Nineteenth Ground for Relief, Stein claims the trial court admitted evidence which had been tampered with, i.e., that the wire recordings and transcripts of the recordings offered at trial were different from those produced in discovery and somehow withheld exculpatory evidence from the jury.

The Report rejected this claim on the ground Stein had not shown any constitutional

violation (Report, Doc. No. 11, PageID 1252-53).  Stein objects that if this were correct, a State could convict a defendant with "planted evidence, manufactured evidence, or no evidence at all. . . ."  (Objections, Doc. No. 20, PageID 1302.)  That argument is a red herring.  The question of whether evidence is authentic is a question for the trial judge and there is no constitutional right under which a habeas court can review an authenticity ruling.  Planted or manufactured evidence would present a quite different case.

**Ground Twenty-Three: Failure of the Court of Appeals to Reconsider its Rule 26(B) Decision**

In his last Ground for Relief, Stein claims the Second District Court of Appeals deniedhim access to the courts when it refused to reconsider its decision on his 26(B) Application (Petition, Doc. No. 1-2, PageID 33).  The Report found this claim was without merit because the court of appeals did in fact reconsider its decision and write an opinion on what it concluded.  Stein objects, but offers no Supreme Court authority to shows he was entitled as a matter of due process to more reconsideration than he got.  Reconsidering a decision does not mean changing it.

**Supplemental Report**

The Supplemental Report is based on the Magistrate Judge's having listened to the testimony Stein says is perjured and finding no evidence of perjury.  Stein's Objections (Doc. No. 20, PageID 1303) confuse proving a whole conspiracy with proving a single overt act in furtherance of the conspiracy.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that Stein's Objections be stricken and the Petition be dismissed with prejudice on the basis of the original Report. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 2, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).